DECISION
{¶ 1} Relator, David J. Browning, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying his application for permanent total disability ("PTD") compensation, and to enter an order granting such compensation. *Page 2 
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate has rendered a decision, including findings of fact and conclusions of law, finding that the commission did not abuse its discretion when it denied PTD based on the allowed conditions. (Attached as Appendix A.)
 {¶ 3} Relator has objected to the magistrate's decision, asserting that the magistrate erred both in finding that the commission's staff hearing officer ("SHO") was not obligated to consider evidence submitted by relator's vocational expert, and that the magistrate incorrectly found that the SHO's order was supported by "some evidence" as required by State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 4} Relator's objections generally attempt to re-argue issues that were fully addressed in the magistrate's decision. In particular, we find that the magistrate has correctly stated that the commission is not required to accept the opinion of relator's vocational expert because the commission is its own expert on vocational matters. State ex rel.Jackson v. Indus. Comm., 79 Ohio St.3d 266, 271, 1997-Ohio-152. We also adopt the magistrate's finding that the SHO properly relied on medical and psychological assessments of relator's allowed injuries and conditions and the percentage of impairment resulting therefrom. Relator now argues that the SHO erroneously concluded that relator's PTD application was improperly based on relator's age as the sole cause or primary obstacle to re-employment. The magistrate has correctly applied the law set forth by this court in State ex rel. Speelman v. Indus.Comm. (1992), 73 Ohio App.3d 757, 763, setting forth the standard for balancing age and disability resulting from allowed conditions, which standard was approved and applied by the Supreme Court of Ohio in *Page 3 State ex rel. DeZarn v. Indus. Comm., 74 Ohio St.3d 461, 1996-Ohio-143, where the Supreme Court noted that PTD "was never intended to compensate a claimant for simply growing old." DeZarn, at 463. The magistrate's decision correctly applies DeZarn and Speelman when assessing whether the commission abused its discretion in its allocation of relator's inability to work between his age and his allowed conditions.
 {¶ 5} Accordingly, pursuant to our independent review of the matter under Civ.R. 53, this court finds that the magistrate has properly determined the pertinent facts and applied the appropriate law to those facts. Relator's objections are overruled and this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and the requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
BRYANT and KLATT, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 4 
 APPENDIX A
State ex rel. David J. Browning, Relator, v. Industrial Commission of Ohio and B. Miller Sons Trucking Inc., Respondents.
 MAGISTRATE'S DECISION Rendered on April 23, 2007 IN MANDAMUS {¶ 6} In this original action, relator, David J. Browning, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation. *Page 5 
Findings of Fact: {¶ 7} 1. On April 4, 2002, relator sustained an industrial injury while employed as a "yard spotter" for respondent B. Miller Sons Trucking Inc., a state-fund employer. On that date, relator stepped and fell into a hole as he was walking back to a truck. The industrial claim is allowed for "intertrochanteric fracture close[d], left, path[ologic] fracture tibia or fibula right, depressive disorder, not elsewhere classified," and is assigned claim number 02-340754.
 {¶ 8} 2. On October 22, 2002, an Ohio Bureau of Workers' Compensation ("bureau") vocational rehabilitation case manager wrote in a closure report:
 Mr. Browning was referred for work conditioning and he completed 4 weeks of an 8 week program before experiencing pain in his right leg. He was subsequently diagnosed with a right proximal tibia fracture, likely due to overuse or stress secondary to Mr. Brownings attempts to increase his overall functioning. This case manager consulted the physician of record, Dr. Spelles and obtained documentation indicating that further treatment recommendations were not recommended in order to allow time for the fracture to heal, specifically 6-8 weeks. Thus, Mr. Browning is not considered to be medically stable at this time to continue with active vocational services with the specific goal of assisting Mr. Browning in returning to employment.
 Therefore, in light of the above mentioned, it is this writer's respectful opinion that this vocational file be closed in the field, effective October 22nd, 2002 due to issues of medical instability, as the physician of record has indicated that Mr. Browning cannot continue with therapeutic or vocational services at this time. A medical hold status is respectfully requested as well.
 {¶ 9} 3. On March 28, 2005, another bureau vocational rehabilitation case manager wrote in a closure report: *Page 6 
 Correspondence was received from the injured worker's treating Psychologist. His psychologist stated, "Psychologically, he has not been able to handle the stress of the program and from a psychological perspective, is incapable of functioning in the program". Following receipt of this correspondence, this case manager contacted the treating Psychologist and discussed in great detail his status. The psychologist indicated the injured worker would work himself into the ground trying to please everyone and he just did not think it was in his best interest to return to work at age 63[.] I advised the psychologist based upon our conversation I would close his rehabilitation file per his direction.
 As such, Mr. Browning's rehabilitation file is being closed as not psychologically stable to participate per direction of the treating psychologist effective 03/28/2005. * * *
 {¶ 10} 4. On May 9, 2005, psychologist Robert A. MacGuffie, Ph.D., wrote:
 I have been treating Mr. Browning for a Depressive Disorder, NOS since August 5, 2003. I lasted [sic] treated him on May 3, 2005.
 Mr. Browning recently participated in a rehabilitation program which was unsuccessful largely because he could not handle the stress. It was extremely important for him to have the opportunity to return to work and his motivation was high. However, he simply was not capable of functioning in the program.
 It is my opinion that Mr. Browning's depressive disorder alone renders him unable to perform sustained remunerative employment. The reason being that he could not maintain adequate pacing and existence in a work or work-like environment. Deteriorating [sic] and decompensation would occur quickly. In my opinion, Mr. Browning is permanently and totally disabled.
 {¶ 11} 5. On June 23, 2005, at the request of relator's counsel, relator was examined by Jeffrey F. Wirebaugh, M.D., who issued a report dated July 14, 2005 stating: *Page 7 
 Due to the impairments from his allowed conditions the claimant is unable to ambulate outside of his own home without the aid of a walker. He is unable to walk on rough, uneven surfaces or up and down inclines. He is unable to squat, stoop, kneel, or climb. He cannot climb stairs. He could not operate foot pedals or controls with his lower extremities.
 The impairments from his allowed conditions prevent the claimant from returning [to] his employment as a truck driver. He is unable to enter and exit his truck and he could not safely operate the various foot pedals and controls. He could not safely operate a commercial vehicle.
 {¶ l2} 6. On October 21, 2005, relator filed an application for PTD compensation. In support, relator submitted the reports from Drs. MacGuffie and Wirebaugh.
{¶ l3} 7. The PTD application form asks the applicant to provide information regarding his education. Relator reported that the highest grade of school he completed is the 11th grade and this occurred in 1959. Relator did not graduate from high school but he did obtain a certificate for passing the General Educational Development test (GED). He has not attended a trade or vocational school or had any type of special training.
{¶ l4} 8. The application form also poses three questions to the applicant: (1) "Can you read?" (2) "Can you write?" and (3) "Can you do basic math?" Given a choice of "yes," "no" and "not well," relator selected the "yes" response to all three queries.
{¶ l5} 9. The PTD application form also asks the applicant to provide information regarding his work history. Relator indicated that he was employed as a truck driver for a trucking company from 1978 to 2002. He was employed as a jailer for a sheriff's department from 1977 to 1978. He was employed as truck driver at a factory *Page 8 
from 1976 to 1977. He was employed as a "working manager" for an "auto parts store" from 1974 to 1976.
{¶ l6} 10. The application form asks the applicant to answer six questions regarding each job listed. The questions and answers relating to the "Working Manager — Auto Parts" job are as follows:
 [One] Your basic duties: Take care of customers, stock, order inventory.
 [Two] Machines, tools, equipment you used: Cash register, pain[t] mixer, battery charger.
 [Three] Exact operations you performed: I worked right alongside with my employees to wait on customers.
 [Four] Technical knowledge and skills you used: Knowledge of the parts of an automobile.
 [Five] Reading / Writing you did: We had a file of inventory cards and we checked off the cards when we sold a part. When there was no more parts on the card, we turned it upside down and it was time to order. A secretary did the time cards for the employees.
 [Six] Number of people you supervised: 4
 {¶ l7} 11. On December 5, 2005, at the commission's request, relator was examined by Harvey A. Popovich, M.D. Dr. Popovich examined only for the allowed physical conditions of the claim. In his four-page narrative report, Dr. Popovich wrote:
PRESENT COMPLAINTS
 Mr. Browning states that he experiences left hip pain approximately twice a week reaching an intensity of between 3 and 4 on a 0 to 10 scale. He has no complaint with respect to the fracture site of his right lower leg. He also denies numbness and tingling of both lower extremities. He utilizes a cane for purposes of ambulation which he holds in his left hand. Mr. Browning states that there has been no significant *Page 9 
change in the condition of his left hip or his right lower leg in the past one year, and at this time there is no plan for further treatment.
 Mr. Browning estimates that he can sit for three hours, stand for one half hour and walk for six to eight hundred feet utilizing his cane. He is unable to go up and down stairs without assistance. He continues to drive and is independent with respect to his personal self care. He also participates in cooking, cleaning and laundry activities. He does not do any yard work. He currently spends most of his time reading and watching television. Mr. Browning is asked if he has any additional information to offer concerning his injury, treatment or current symptoms and he indicates that he does not.
 * * *
 PAST MEDICAL HISTORY
 Mr. Browning is followed by a neurosurgeon with respect to a one year history of low back pain. Mr. Browning was hospitalized in 1989 as a result of a blood clot in his right leg. He had bariatric gastric bypass surgery in 2000 at which time he also had an appendectomy and a cholecystectomy. He has also had a tonsillectomy and repair of a ventral hernia. He has a two year history of diabetes mellitus with Charcot deformities of his feet. He has also had surgery as a result of necrotizing fasciitis of his left groin and he has had a right knee arthroplasty which he states was not related to the fracture of his right lower leg sustained in September of 2002. Mr. Browning states that he has not worked since 4/4/02 as a result of weakness in his left leg.
 * * *
 DISCUSSION
 Current examination reveals a slight reduction in left hip range of motion and no abnormal findings of the right leg attributable to the incident of 4/4/02 and its allowed conditions. Mr. Browning's activities of daily living including work are limited by the allowed condition pertaining to the left hip fracture. Examination of the right lower extremity reveals mild reduction in right knee and right ankle range of *Page 10 
motion which is not attributable with reasonable medical probability to the allowed conditions of this claim but rather to other medical conditions.
 {¶ l8} 12. Dr. Popovich also opined that the combined whole person impairment from the allowed physical conditions of the claim is two percent.
{¶ l9} 13. Dr. Popovich also completed a physical strength rating form on which he indicated that relator is capable of performing "sedentary work."
 {¶ 20} 14. On December 9, 2005, at the commission's request, relator was examined by psychologist Raymond D. Richetta, Ph.D. In his seven-page narrative report, Dr. Richetta wrote:
 Discussion
 The following is a summary of the Claimant's functional capacity in various domains of behavior:
 A) Activities of daily living: He and his wife live together. No one lives with them. He helps with cooking (he cooks most of the meals) and washing dishes. He occasionally helps with the laundry. He is able to drive without confusion. He does not have dependency needs regarding self-care, but he carries a phone with him and will not shower without his wife being in the house: "I'm afraid I might fall." His sleep is characterized by frequent awakening for reasons he does not know. He sleeps about six hours a night. His appetite is "good at night." He said he is able to eat whatever he wants, but must eat small amounts due to the bariatric surgery. But at night, "I can't get full." The Claimant has no impairment in activities of daily living due to the allowed psychological condition alone.
 B) Social functioning: He seldom socializes and avoids social groups, but he entertains family members when they visit him. The Claimant has a mild to moderate impairment in social functioning due to the allowed psychological condition alone.
 C) Concentration, persistence and pace: His concentration for the purposes of the evaluation was unimpaired. He said *Page 11 
he can concentrate "pretty decently. I don't do a lot of wandering." He finds his persistence occasionally limited by pain, not by depression. He has no impairment in concentration, persistence, and pace due to the allowed psychological condition alone.
 D) Adaptation to stress in work/work-like settings: He finds coping with stress, or adapting to new situations difficult. He often reacts with anger and frustration. He is quick to become irritable. The Claimant has a moderate impairment in adaptation to stress in work-like settings due to the allowed psychological condition alone.
 * * *
 The evaluation finds the allowed psychological condition, Depressive Disorder NEC, to be a Class 2, Mild impairment, corresponding to a 15% impairment of the whole person[.]
 * * *
 {¶ 21} 15. Dr. Richetta also completed an occupational activity assessment form dated December 9, 2005. On the form, Dr. Richetta wrote:
 The only psychologically-based work limitation is the following: He has poor frustration tolerance, so he could not work in an environment in which he would have to frequently manage frustration (e.g., customer service where he might have to manage irate customers). He has no other psychologically-based work impairments.
 {¶ 22} 16. In further support of his PTD application, relator submitted a report dated February 6, 2006, from Joseph E. Havranek, a vocational expert. In his five-page report, Havranek states:
 * * * Education and Training History
 Mr. Browning completed the 11th grade in 1959. He earned the GED in 1990.
 * * * Complete Work History *Page 12 
 Mr. Browning was a Truck Driver from 1978 to 2002 and from 1976 to 1977. He was a Jailer for a sheriff's department from 1977 to 1978. He was a Working Manager for an auto parts store from 1974 to 1976.
 * * * Vocational Analysis/Transferable Skills
 The claimant's past work can be categorized as follows:
TBTABLEJob * * * Skill PhysicalTitle * * * Level Demand
Truck Driver * * * Semi-Skilled Medium Jailer * * * Semi-Skilled Light Working Manager * * * Skilled Medium TB/TABLE
 Transferable skills acquired include:
 *verification of load against shipping papers;
 *application of knowledge of commercial driving regulations;
 *maintenance of truck log;
 *knowledge of how to operate a commercial vehicle.
 Work skills acquired and last used more than 15 years ago are too remote upon which to base transferability.
 * * * Vocational Questions
 A. Considering only the impairments caused by the allowed conditions in the claim(s) and the claimant's age, work experience and education/training, is the claimant able to engage in any form of sustained remunerative employment? If so, what specific jobs can the claimant perform?
 Two good faith attempts were made regarding vocational rehabilitation. The effort first was closed on 10/22/02 due to medical instability. The second effort was closed on 3/28/05 after a Comprehensive Vocational Evaluation noted significant barriers to employment and his treating psychologist took him out of rehabilitation services due to Mr. Browning's inability to function in a job search and that it was not in the claimant's best interest to continue rehabilitation. *Page 13 
 The treating psychologist, Dr. MacGuffie, opined that Mr. Browning could not return to work due to inability to maintain adequate pacing and existence in a work or work-like setting without deterioration and decompensation quickly occurring. Dr. MacGuffie concluded that Mr. Browning was permanently and totally disabled. * * *
 Mr. Browning would not be a candidate for sedentary work because of the extraordinary amount of work adjustment such a transition would require. Mr. Browning is a person closely approaching advanced age, with a GED, and no skills transferable to sedentary work.
 The claimant is incapable of any sustained remunerative employment based solely on the allowed conditions in this claim.
 {¶ 23} 17. Following a July 24, 2006 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
 This Order is based particularly upon the reports of Doctor Richetta (12/9/2005) and Doctor Popovich (12/5/2005).
 This Staff Hearing Officer has reviewed all evidence in file and at today's hearing and basis this Order on the evidence and reasons specifically cited in the following findings:
 This Staff Hearing Officer finds that injured worker is a 63 year old male who has completed the 11th grade and received a G.E.D. His work history has consisted of work as a truck driver, a jailer, and a working manager. His industrial injury occurred 4/4/2002 when he was working as yard spotter, walking back to a truck and stepped and fell in a hole. This Staff Hearing Officer notes that injured worker has undergone surgery of an open reduction and internal fixation of left intertrochanteric hip fracture with a compressed leg screw. He had post-operative physical therapy, but, in therapy, he sustained a fracture of his right tibia. The tibial fracture was treated conservatively. The injured worker's last day worked was 4/4/2002, the day of his injury.
 This Staff Hearing Officer finds that injured worker's Permanent and Total Disability Application is supported by the medical reports of Doctors Wirebaugh and MacGuffie. *Page 14 
 This Staff Hearing Officer notes that the report of Doctor Wirebaugh, dated 7/14/2005, only indicates that injured worker is unable to return to his former position of employment as a truck driver. As this does not fit the criteria for permanent and total disability status, this Staff Hearing Officer finds that the sole support for injured worker's Permanent and Total Disability Application is Doctor MacGuffie's 5/9/2005 report pertaining to the allowed psychological conditions in this claim.
 Doctor Richetta examined the injured worker on 12/9/2005 regarding the allowed psychological conditions in this claim. Doctor Richetta noted that injured worker takes Zoloft and is currently in treatment with Doctor MacGuffie on a monthly basis and psychotherapy. Doctor Richetta found that injured worker had no impairment in regard to activities of daily living due to the allowed psychological conditions alone. He found, in regard to social functioning, that injured worker has a mild to moderate impairment due to the allowed psychological conditions alone. In terms of injured worker's concentration, persistence, and pace, Doctor Richetta found no impairment in regard to the allowed psychological conditions alone. Finally, in adaptation to stress and worklike settings, Doctor Richetta found injured worker to have a moderate impairment. Doctor Richetta concluded, based upon his examination and review of the medical records, that injured worker is capable of sustained remunerative employment with the modification that he has poor frustration tolerance so he could not work in an environment in which he would have to frequently manage frustration, for example, customer service. Doctor Richetta found that injured worker has no other psychologically based work impairments.
 Therefore, based upon the report of Doctor Richetta, which is found persuasive, this Staff Hearing Officer finds that, when impairment arising from the allowed psychological conditions is considered, the injured worker has the residual functional capacity to perform work as described in the report. Therefore, this Staff Hearing Officer finds that injured worker is capable of sustained remunerative employment.
 The injured worker was also examined by Doctor Popovich on 12/5/2005 regarding the allowed physical conditions in this claim. Doctor Popovich noted that injured worker is not *Page 15 
receiving any treatments specific to his left hip or right tibia fractures at this time. Doctor Popovich noted that injured worker utilizes a cane for ambulation. Doctor Popovich found that injured worker's activities of daily living, including work, are limited by the allowed condition pertaining to the left hip fracture. The examination of the right lower extremity revealed mild reduction of the right knee and right ankle range of motion, which is not attributable with reasonable medical probability to the allowed conditions in his claim. Doctor Popovich concluded that injured worker is capable of sustained remunerative employment and, based upon his examination findings, found that injured worker is capable of sedentary work capacity.
 Based upon the examination findings of Doctor Popovich, which are found persuasive, this Staff Hearing Officer finds that, when impairment arising from the allowed physical conditions is considered, the injured worker has the residual functional capacity to perform at least sedentary work as described in the report of Doctor Popovich.
 The injured worker's age is found to be a neutral asset regarding his potential for return to work.
 The injured worker's education is found to be a positive asset regarding his potential for return to work. The injured worker possesses a G.E.D. and is capable of reading, writing, and doing basic math well. This Staff Hearing Officer finds that injured worker's work history of working as a manager shows that he is capable of demonstrating judgment, interpersonal skills, and demonstrates his intelligence.
 Therefore, this Staff Hearing Officer finds that injured worker already possesses skills to obtain and perform work activities consistent with the claim related functional limitations of Doctor[s] Richetta and Popovich.
 This Staff Hearing Officer notes that injured worker has participated in a rehabilitation program, however, the program was closed on March of 2005 at the request of injured worker's treating psychologist, Doctor MacGuffie. The psychologist indicated the injured worker would work himself into the ground trying to please everyone and he just did not think it was in his best interest to return to work at age 63. *Page 16 
 This Staff Hearing Officer notes that Permanent and Total Disability Compensation was never intended to compensate an injured worker for simply growing old. The Industrial Commission must have the discretion to attribute an injured worker's inability to work to age alone and deny compensation where evidence supports such a conclusion, State ex rel. DeZarn v. Industrial (1996), Ohio St.3d 451.
 This Staff Hearing Officer finds that, when the restrictions from Doctor Richetta are taken into consideration, the injured worker could be employed in a setting where he would not have to frequently manage frustration. Again, Doctor Richetta is found persuasive that injured worker has no other psychologically based work impairments.
 Therefore, because the injured worker has the residual functional capacity to perform work as described in the reports of Doctors Richetta and Popovich, when only impairment arising from the allowed conditions is considered, and based upon the above analysis of injured worker's non-medical disability factors, it is found that injured worker is not precluded from sustained remunerative employment. Therefore, the injured worker's Permanent and Total Disability Application, filed 10/21/2005, is hereby DENIED.
(Emphasis sic.)
 {¶ 24} 18. On September 21, 2006, relator, David J. Browning, filed this mandamus action.
Conclusions of Law: {¶ 25} Two main issues are presented: (1) whether this court must conclude that the commission failed to consider the Havranek vocational report and thus abused its discretion; and (2) whether the commission abused its discretion in its consideration of relator's age. *Page 17 
 {¶ 26} Turning to the first issue, it is well settled that, while the commission may credit offered vocational evidence, it is not critical nor necessary that it do so because it is the expert on this issue.State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266, 271. Thus, the commission is free to reject all vocational expert opinions of record and rely upon its own analysis of the nonmedical factors. Id. That is what the commission, through its SHO, did here. The commission engaged in its own analysis of the nonmedical factors to reach its conclusion that the nonmedical factors permit sustained remunerative employment.
 {¶ 27} Moreover, contrary to relator's assertion here, the commission is not required to list the evidence it considered and rejected. The commission is only required to cite the evidence upon which it relied.State ex rel. Lovell v. Indus. Comm. (1996), 74 Ohio St.3d 250, 252. Because the commission does not have to list the evidence considered, the presumption of regularity that attaches to commission proceedings gives rise to a second presumption — that the commission indeed considered all the evidence before it. Id.
 {¶ 28} Thus, contrary to relator's assertion here, that the SHO's order of July 24, 2006 fails to list the Havranek report as evidence considered, or that the order fails to explain why the report was rejected, does not constitute an abuse of discretion.
 {¶ 29} Turning to the second issue, relator contends that the commission's reliance upon State ex rel. DeZarn v. Indus. Comm. (1996),74 Ohio St.3d 461, constitutes an abuse of discretion and fatally flaws the commission's nonmedical analysis. Accordingly, it is helpful to review the law relevant to the DeZarn case. *Page 18 
 {¶ 30} Ohio Adm. Code 4121-3-34(D)(1)(g) states:
 If, after hearing, the adjudicator determines that there is appropriate evidence which indicates the injured worker's age is the sole cause or primary obstacle which serves as a significant impediment to reemployment, permanent total disability compensation shall be denied. However, a decision based upon age must always involve a case-by-case analysis. The injured worker's age should also be considered in conjunction with other relevant and appropriate aspects of the injured worker's nonmedical profile.
 {¶ 31} Apparently, Ohio Adm. Code 4121-3-34(D)(1)(g), the rule regarding advanced age as the sole cause of disability, was derived from this court's decision in State ex rel. Speelman v. Indus. Comm. (1992),73 Ohio App.3d 757, 763, wherein this court pronounced:
 The non-medical factors include those that may, in certain instances, be held to constitute causation for the person being unable to engage in substantially remunerative employment despite the medial disability from the allowed condition(s). For example, claimant may be disabled at age fifty-five from returning to the former position of employment but, at that time, be capable of obtaining sustained remunerative employment within the medically limiting capabilities that the claimant has, after considering all non-medical factors, including age. Ten or fifteen years may elapse with the physical condition remaining approximately the same. At that time, the age factor may be combined with the disability to disqualify claimant from any sustained remunerative employment. In that event, the Industrial Commission should have the discretion to find that the sole causal factor is the increase in age rather than the allowed disability.
 {¶ 32} In DeZarn, the Supreme Court of Ohio approved of and applied this court's pronouncement in Speelman to uphold the commission's denial of a PTD application in a mandamus action. *Page 19 
 {¶ 33} Howard S. DeZarn had industrially injured his back and knees in 1981. In 1988, Mr. DeZarn applied for PTD compensation. In 1991, at the commission's request, Mr. DeZarn was examined by Dr. Woolf.
 {¶ 34} The DeZarn court describes Dr. Woolf s report:
 * * * Dr. Woolf ultimately assessed a twenty-seven percent permanent partial impairment attributable to claimant's allowed conditions. Dr. Woolf concluded, "This gentleman, somewhere in his 60's, age uncertain, was not entirely cooperative in this examination, but I think that we were able to secure the correct measurements and things to arrive at a determination. The true limiting factor on his ability to work, in my opinion, is time and the natural progression of aging. I think his industrial mishaps have long ago healed and what he has is what he has. * * *"
Id. at 462.
 {¶ 35} Citing Dr. Woolf's report, the commission denied Mr. DeZarn's PTD application. The commission's order explained:
 "The claimant is 71 years old and has a work history as a construction worker, logger and heavy equipment operator. Commission Specialist, Dr. Woolf, has indicated that the claimant has a 27% permanent partial impairment from the allowed conditions in the claim. He further indicated that the true limitation [sic] factor on his ability to work was time and the natural progression of aging. Given the relatively small percentage of impairment assigned by Dr. Woolf, the claimant's age is the primary obstacle in his returning to work. It is found that the disability resulting from the allowed conditions of the claim do[es] not permanently preclude a return to any form of sustained remunerative employment."
Id. at 462-463.
 {¶ 36} After quoting this court's pronouncement in Speelman, theDeZarn court states: *Page 20 
 Speelman makes an outstanding point. Permanent total disability compensation was never intended to compensate a claimant for simply growing old. Therefore, the commission must indeed have the discretion to attribute a claimant's inability to work to age alone and deny compensation where the evidence supports such a conclusion.
 In this case, Dr. Woolf's report is "some evidence" supporting such a finding. Dr. Woolf specifically attributed claimant's inability to work to "time and the natural progression of aging." The commission's denial of permanent total disability compensation was not, therefore, an abuse of discretion.
Id. at 463-464.
 {¶ 37} Here, the SHO's order of July 24, 2006 states in part:
 This Staff Hearing Officer notes that injured worker has participated in a rehabilitation program, however, the program was closed on March of 2005 at the request of injured worker's treating psychologist, Doctor MacGuffie. The psychologist indicated the injured worker would work himself into the ground trying to please everyone and he just did not think it was in his best interest to return to work at age 63.
 This Staff Hearing Officer notes that Permanent and Total Disability Compensation was never intended to compensate an injured worker for simply growing old. The Industrial Commission must have the discretion to attribute an injured worker's inability to work to age alone and deny compensation where evidence supports such a conclusion, State ex rel. DeZarn v. Industrial (1996), Ohio St.3d 451.
 {¶ 38} In the magistrate's view, the SHO's citation to DeZarn was in response to the statement attributed to Dr. MacGuffie that "he just did not think it was in [relator's] best interest to return to work at age 63." To the extent that Dr. MacGuffie's statement suggests that, at age 63, relator is too old to work, it was not inappropriate for the SHO to cite DeZarn for the proposition that PTD was never intended to compensate an injured worker for simply growing old. *Page 21 
 {¶ 39} However, relator argues that the commission's citation toDeZarn is inappropriate because, unlike the report of Dr. Woolf inDeZarn, there is allegedly no doctor's report nor other evidence here to suggest that relator was actually seeking PTD compensation for simply growing old. Relator points out that he was 59 years of age on the date of his industrial injury and that he was age 63 at the time of the hearing on his PTD application.
 {¶ 40} Relator also claims that the commission's order is internally inconsistent on the age issue because the commission viewed relator's age as a "neutral asset," while also holding that any inability to work is attributable to age alone. The magistrate disagrees with relator's contentions.
 {¶ 41} Ohio Adm. Code 4121-3-34(D)(2)(b) states:
 If, after hearing, the adjudicator finds that the injured worker, based on the medical impairment resulting from the allowed conditions is unable to return to the former position of employment but may be able to engage in sustained remunerative employment, the non-medical factors shall be considered by the adjudicator.
 The non-medical factors that are to be reviewed are the injured worker's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record that might be important to the determination as to whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed. * * *
 {¶ 42} It is clear to this magistrate that the commission's nonmedical analysis is directed towards Ohio Adm. Code 4121-3-34(D)(2)(b) and not towards 4121-3-34(D)(1)(g). That is, the commission denied PTD compensation because it found that the nonmedical factors permit relator to perform sustained remunerative employment *Page 22 
within his residual functional capacity. Contrary to relator's suggestion, the commission did not deny PTD compensation because it found that an inability to work is attributable to age alone.
 {¶ 43} Again, it appears that the SHO's reference to DeZarn was simply the SHO's answer to the statement attributed to Dr. MacGuffie suggesting that relator is too old to work at age 63.
 {¶ 44} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1